IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER J. NELSON,<br>Individually and On Behalf Of<br>All Others Similarly Situated, | )<br>)<br>)<br>) | |
| Plaintiffs, | ) | Civil Action No. _____ |
| v. | )<br>) | Class Action Complaint |
| SONIC RESTAURANTS, INC.<br>and SONIC CORP. | )<br>)<br>) | |
| Defendants. | )<br>) | |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Christopher J. Nelson, on behalf of himself and all others similarly situated, brings the following complaint against Sonic Restaurants, Inc. and Sonic Corp. and states as follows:

**NATURE OF THE CASE**

1.   This action is brought for violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* ("TCPA" or "the Act"). In violation of the TPCA, Defendants have repeatedly sent text messages without express consent to Plaintiff and others to advertise and promote their business

1

using an automatic telephone dialing system. Plaintiffs bring this action for damages and other legal and equitable remedies available under the Act.

## PARTIES, JURISDICTION AND VENUE

2. Christopher J. Nelson is a resident and citizen of the State of Florida. He is over the age of 21.

3. Defendant Sonic Restaurants, Inc. is a corporation organized under the laws of the State of Delaware having its principal place of business in Oklahoma City, Oklahoma. Sonic Restaurants, Inc. is subject to the jurisdiction of this Court and may be served with process through its registered agent, CT Corporation System, 1201 Peachtree Street, N.E. in Atlanta, Georgia 30361.

4. Defendant Sonic Corp. is a corporation organized under the laws of the State of Delaware with its principal place of business located at 300 Johnny Bench Dr., Oklahoma City, Oklahoma 73104. Sonic Corporation is subject to the jurisdiction of this Court and may be served with process under the Georgia Long-Arm Statute, O.C.G.A. § 9-10-91 through its registered agent, Paige S. Bass, 300 Johnny Bench Drive, Oklahoma City, Oklahoma 73104.

5. Sonic Restaurants, Inc. is a wholly owned subsidiary of Sonic Corp. The two corporations are referred to collectively in this complaint as "Sonic."

6.     This Court properly has jurisdiction over the subject matter of this action as one arising under the laws of the United States pursuant to 28 U.S.C. § 1331.  *See Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740 (2012).  The Court also has jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(d) in that members of the plaintiff class are citizens of States different than any defendant and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

7.     This Court has personal jurisdiction over Sonic Restaurants, Inc. because it is generally engaged in transacting business in the State of Georgia through its ownership and operation of and receipt of substantial revenues from numerous drive-in restaurants here.  Sonic Restaurants, Inc. is also registered with the Georgia Secretary of State to do business in Georgia.

8.     This Court has personal jurisdiction over Sonic Corp. because it is generally engaged in transacting business in the State of Georgia by among other things conducting its franchise restaurant operations in the state and receiving substantial revenues from those operations as a result of sales made here.  Sonic Corp.'s business activities in the State of Georgia are substantial, continuous, and systemic.

9. Upon information and belief, personal jurisdiction also exists with regard to both Defendants because they – or agents acting on their behalf –sent unsolicited text advertisements in violation of TCPA to residents of and consumers in the State of Georgia, causing tortious injury to the privacy interests of class members here.

10. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) because both Defendants reside in this district.

## FACTUAL BACKGROUND AND ALLEGATIONS

11. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. The TCPA regulates, among other things, the use of automated telephone dialing systems, or "autodialers." Specifically, the plain language of 227(b)(1)(A) prohibits the use of an autodialer to make any non-emergency call to a wireless phone number without the prior express consent of the called party.

13. According to findings by the Federal Communication Commission ("FCC"), the agency charged with issuing regulations implementing TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that

wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

14. Under the TCPA and pursuant to a January 2008 Declaratory Ruling issued by the FCC, the burden is on the Defendants to demonstrate that Plaintiff and the other members of the class he seeks to represent provided prior express consent within the meaning of the statute to receive calls on their cell phones made using an automatic telephone dialing system.

15. The term "Short Message Service" or "SMS" describes a messaging system that allows cellphone users to send and receive short text messages, usually limited to 160 or so characters.

16. SMS messages typically are to cellphones using the phone number assigned to the device and can be received by the cellphone owner virtually anywhere.

17. Unlike most other forms of advertising, SMS messages typically cost money to the recipients because cellphone users frequently pay their service providers for each text message they receive or have a service plan that includes a specified number of messages, regardless of whether or not the message is authorized.

18. SMS or text messages are "calls" governed by the TCPA.

19.     Defendants use SMS or text messaging for purposes of advertising their business.

20.     Defendants – or agents acting on their behalf – use autodialers to send non-emergency SMS or text message advertisements to consumers for the purpose of promoting Sonic restaurants without prior consent.

21.     Among the SMS numbers used by Defendants in their text message advertising program are 866-462 and 866-77.

22.     Defendants – or agents acting on their behalf – have sent more than 25 unwelcome SMS or text message advertisements to a cellphone owned by Mr. Nelson during 2011 and 2012 using SMS numbers 866-462 and 866-77.

23.     Mr. Nelson has never consented to receive SMS or text message advertisements from Defendants.

24.     Shortly after receiving the first such advertisement, Mr. Nelson called Defendants' corporate headquarters in Oklahoma to complain about having received SMS or text message advertisements from Sonic.  He requested that his cellphone number be removed from Sonic's messaging list so that he would no longer receive unsolicited SMS or text message advertisements.  Sonic's representative assured him that he would be removed from the list and that he would receive no more advertisements.

25. Despite Sonic's assurances, Mr. Nelson continued to receive unsolicited text message advertisements from Sonic.

26. Mr. Nelson, in response, once again telephoned Sonic's corporate headquarters, spoke with a representative, and told her that he did not want to continue to receive unsolicited text message advertisements sent to his cellphone. Once again, he was assured that the advertisements would stop.

27. Nonetheless, Defendants – or agents acting on its behalf – continued to send unsolicited text message advertisements to Mr. Nelson's cellphone.

28. Typical of the text message advertisements sent to Mr. Nelson's cellphone include the following:

> From 876-642 on January 18, 2012:
>
>> Crank it up at SONIC with Chili & Cheese!  Get a Chili & Cheese Coney, Jr. Chili Cheeseburger or Medium Chili Cheese Tots for $1.99.  Hurry in today!
>
> From 876-642 on February 9, 2012:
>
>> Want to boost your SONIC Blast.  Sweeten the deal tonight by adding caramel, chocolate, or real strawberries along with your favorite candy & real ice cream.  Yum!

> From 876-642 on April 5, 2012:
>
> > Time is running out!  $1.99
> > Snack Size Jumbo
> > Popcorn Chicken after
> > 8 pm – stop by your
> > Favorite SONIC before
> > its too late.  See more @
> > http://bit.ly/HMEOpA

The reference "http:bit.ly/HMEOpA" is to a website maintained by Defendants that contains further advertising relating to the food sold at its restaurants.

28. On information and belief, Defendants – or agents acting on their behalf – sent text message advertisements identical to those received by Mr. Nelson to thousands of other wireless phone numbers for the purpose of advertising their drive-in restaurants, including to cellphones owned by Georgia residents, without receiving prior consent and all in violation of the TCPA.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action on behalf of himself and a class of defined as follows:

> All persons within the United States who received one or more SMS or text messages on their wireless phones sent by or on behalf of Defendants using the SMS short codes 864-462, 866-77, or any other SMS short codes using an automatic telephone dialing system as defined by TCPA within four years preceding the filing of this action and who did not furnish Defendants with prior express consent for such messages.

Excluded from the class are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action. The class meets the requirements of Fed. R. Civ. P. 23(a) and satisfies the standards of both Fed. R. Civ. P. 23(b)(2) and (b)(3)

### Rule 23(a)

30.     Numerosity.  The members of the class are so numerous that joinder of all members is impracticable.  The class, however, is ascertainable as the names and addresses of all class members can be identified in the business records maintained by Defendants.  Plaintiff does not know the precise number of class members, but the class is believed to number in the thousands.

31.     Typicality.  The claims of the named class representative and the absent class members are all tangible, have a common origin, and share a common basis.  Their claims are based on the same legal theories, arise from the same wrongful course of conduct, Defendants have acted in the same way toward Mr. Nelson and the absent class members, and both Mr. Nelson and the absent class members have been injured in the same way.  If brought and prosecuted individually, the claims of each class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

32. <u>Adequacy of Representation</u>.  Mr. Nelson is willing and prepared to serve in a representative capacity with all of the resulting obligations and duties. He has the capacity to properly represent the class, will fairly and adequately protect the interests of members of the class, and has no interests adverse to or in conflict with the interests of other class members. In addition, he has retained attorneys experienced in the prosecution of complex civil litigation in general and class actions in particular.

33. <u>Commonality</u>.  There are numerous common questions of law and fact common to the claims of all class members. These common legal and factual questions include, among other things:

   a. Whether Defendants sent SMS or text messages to wireless telephone owned by Plaintiff and other class members;

   b. Whether the SMS or text messages sent by or on behalf of Defendants to the wireless telephone numbers of the class members were made using an automatic telephone dialing system;

   c. Whether the SMS or text messages sent by or on behalf of Defendants to the wireless telephone numbers of the Class were made for emergency purposes;

   d. Whether Defendants' conduct violated 47 U.S.C. § 227(b)(1)(A);

e.  Whether Defendants willfully or knowingly violated 47 U.S.C. § 227(b)(1)(A);

f.  Whether Mr. Nelson and the class are entitled to a permanent injunction enjoining Defendants from continuing to engage in their unlawful conduct?

### Rule 23(b)(2)

34. Defendants have acted on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

### Rule 23(b)(3)

35. The questions of law and fact common to members of the class predominate over any questions affecting only individual members.

36. A class action is superior to any other means for the fair and efficient adjudication of this controversy in that:

(a) Given the extensive common questions of law and fact there would be enormous economies to the courts and the parties in litigating the common issues on a class-wide, instead of a repetitive individual, basis;

(b) The size of each class member's damage claim is too small to make individual litigation an economically viable alternative,

such that few class members have any interest in controlling the prosecution of separate actions;

(c) A class action is required for optimal deterrence and compensation and for limiting the court-awarded reasonable expenses incurred by class members; and

(d) No unusual difficulties are likely to be encountered in the management of this class action.

### **FIRST CLAIM FOR RELIEF**
### **(Violation of the Telephone Consumer Protection Act)**

37. The TCPA, 47 U.S.C. §227(b), prohibits the sending of a text message (other than for emergency purposes or with the prior express consent of the receiving party) to cellphones using an automatic telephone dialing system.

38. Defendants violated the TCPA by sending SMS or text message advertisements to Mr. Nelson and other members of the class.

39. None of the SMS or text message advertisements sent to Mr. Nelson and other class members were sent for emergency purposes.

40. Neither Mr. Nelson nor other class members had given express consent to receive such SMS or text message advertisements.

41. All of the SMS or text message advertisements were sent using an automatic telephone dialing system.

42. 47 U.S.C. §227(b)(3) provides a private right of action to enjoin violations of the TCPA and to recover actual damages or $500, whichever is greater, for each violation. In addition, if a court finds that the defendants willfully or knowingly violated the TCPA, the amount of damages can be trebled.

43. Accordingly, Mr. Nelson and the class are entitled to – and do specifically seek in this action -- an injunction preventing Defendants from continuing to violate the TCPA; statutory damages of $500 for each violation committed by Defendants; and, because Defendants have acted willfully and knowingly, trebled damages of up to a total of $1500 for each and every SMS or text message sent to Mr. Nelson and the class.

WHEREFORE, Plaintiff, on behalf of himself and as representative of all other persons similarly situated, prays for judgment against Defendants, awarding relief as follows:

a. An order certifying the proposed class and appointing Plaintiff and his counsel to represent the class;

b. Statutory damages of $500 for each wrongful message sent to Mr. Nelson and each class member as provided for under 47 U.S.C.§ 227(b)(3), trebled as may be appropriate;

c. A permanent injunction restraining Defendants and their agents from sending any SMS or text messages to wireless telephone numbers using an autodialer without first obtaining the prior express consent of the called party;

d. An award of attorneys' fees and costs;

e. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury of any and all issues so triable.

DOFFERMYRE SHIELDS CANFIELD & KNOWLES, LLC

/s/Kenneth S. Canfield
Kenneth S. Canfield
Georgia Bar No. 107744
kcanfield@dsckd.com
Jonathan M. Palmer
Georgia Bar No. 453452
jpalmer@dsckd.com
1355 Peachtree Street, NE, Suite 1600
Atlanta, Georgia  30309-3238
Phone:  404-881-8900
Fax:     404-881-3007

*Counsel for Plaintiff*